```
                                                              1

        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF VIRGINIA
             ALEXANDRIA DIVISION


UNITED STATES OF AMERICA    )
                            )
                            )
     VS.                    )  1:06-CR-427
                            )
                            )  ALEXANDRIA, VIRGINIA
                            )  SEPTEMBER 28, 2012
                            )
ROBERT T. SCHOFIELD         )
_____)
```

---

**TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JAMES C. CACHERIS
UNITED STATES DISTRICT JUDGE**

---

Proceedings reported by stenotype, transcript produced by Julie A. Goodwin.

## **A P P E A R A N C E S**

FOR THE PLAINTIFF:
    UNITED STATES ATTORNEY'S OFFICE
    By:  MR. RONALD L. WALUTES, JR.
    Assistant U.S. Attorney
    2100 Jamieson Avenue
    Alexandria, Virginia  22314
    703.299.3700
    ron.walutes@usdoj.gov

FOR THE DEFENDANT:
    J. FREDERICK SINCLAIR, P.C.
    By:  MR. J. FREDERICK SINCLAIR
    100 North Pitt Street
    Suite 200
    Alexandria, Virginia  22314-3134
    703.299.0600
    jfredsinclair@yahoo.com

OFFICIAL U.S. COURT REPORTER:
    MS. JULIE A. GOODWIN, CSR
    United States District Court
    401 Courthouse Square
    Tenth Floor
    Alexandria, Virginia  22314
    512.689.7587

1  (SEPTEMBER 28, 2012, 9:07 A.M., OPEN COURT.)
2              THE COURT:  You want to do this at the bench?
3              MR. WALUTES:  The Government is not requesting it,
4  Your Honor, although we defer to the defendant.
5              Ron Walutes for the United States.
6              THE COURT:  Do you want it at the bench or not?
7              MR. SINCLAIR:  Your Honor, it wasn't filed under seal.
8  I know normally they do file the Rule 35s under seal, but since
9  it wasn't filed under seal I can argue it from the podium,
10 unless the Court prefers to hear it at the bench.
11             THE COURT:  No, you can argue it in open court.
12             Let me just say, Mr. Yamamoto dropped by this
13 morning and said that you would be handling this.  He had other
14 cases in court.  I know he signed the pleadings with you.
15             MR. SINCLAIR:  That's correct, Your Honor.  He sent
16 the second string in.  I'm covering for Mr. Yamamoto.
17             THE COURT:  Okay.  Very well.
18             MR. SINCLAIR:  Fred Sinclair, Your Honor, for Mr.
19 Schofield.  And seated with me is Robert Schofield who's
20 previously been admitted to this court pro hac vice, I guess
21 almost six years ago, and he's --
22             THE COURT:  Very well.  Glad to have Mr. Schofield
23 with us.
24             Let me note that count two, bribery of a public
25 official; count six, procurement of citizenship or

1  naturalization is unlawfully.  Count two he got 180 months;
2  count six, 120 months concurrent.  Three-year supervised
3  release on each count concurrent.  The Government recommends 33
4  and a third.
5             You want to add anything, Mr. Walutes?
6          MR. WALUTES:  No, Your Honor.  Unless you have
7  questions, I will submit on the --
8          THE COURT:  I do have a question.
9             Usually you start with the level of cooperation
10 that Mr. Schofield has around 50 percent.  I take it that the
11 reason that you don't -- the committee didn't do that, they
12 want to make an example of him at the agency.  Is that correct?
13         MR. WALUTES:  I don't think that is correct, Your
14 Honor.  I think -- I do -- I understand what the Court is
15 saying.  But this view in our -- we have consistently viewed
16 this as a very serious crime.  His cooperation has been without
17 qualification, and I hope that our pleadings to this Court have
18 been clear as to that point.  We do not quibble in any detail
19 with what he has done for us.
20            But, Your Honor, it is going to be still years
21 ahead of us to finish remediating what he has done, and there
22 is a great deal of personal harm to each of these families that
23 came in and then brought in others and their children have
24 grown up in this country only to be removed.  I know Your Honor
25 has seen some of these -- every judge in this courthouse has

1  seen some of these cases with the exception of Judge Trenga who
2  just hasn't seen one, but...
3           I think our recommendation -- I can't speak -- I'm
4  not on the committee, as I think Your Honor knows.  In D.C.
5  where I practiced as an assistant for 15 years, the Court
6  didn't want when I was there a recommendation.  They just
7  wanted to know what the cooperation had been.  I know that is
8  my duty and obligation before this court, and that's why I'm
9  trying to emphasize that.
10          I think that the recommendation is a reflection of
11 the amount of damage that has been done by him, tempered by a
12 complete unqualified cooperation.  I don't know that --
13          THE COURT:  He's made a training video for the
14 Government as well.
15          MR. WALUTES:  He did, Your Honor, and I include --
16          THE COURT:  As well as testify in a couple of trials.
17          MR. WALUTES:  He has, Your Honor.  I don't quibble on
18 any detail that Your Honor is aware of.
19          THE COURT:  Okay.
20          Mr. Sinclair.
21          MR. SINCLAIR:  Good morning, Your Honor.
22          If Your Honor please, this matter has been
23 extensively briefed, and I won't go through all the details
24 that we outlined for the Court as to the extent of his
25 cooperation.  And the Government does admit that he's

1  extensively cooperated.

2           If Your Honor please, the 15-year sentence that you
3  imposed on him reflected the seriousness of what -- of his
4  misdeeds and the gravity of what he did.  There's no doubt that
5  his -- what he did is wrong, but as you may have seen from an
6  attachment in our pleadings, there's a lot of problems over at
7  the immigration service and there's a lot of problems with CIS.
8  But I'm not here to castigate CIS because I don't believe
9  Mr. Schofield standing alone was the main cancer in that
10 agency.  But -- but whatever he did, he's paid the price in the
11 sentence you gave him.

12          But, Your Honor, if I may, I would state that
13 the -- you see this time and time again where you sit here and
14 an individual conspirator testifies against another conspirator
15 one time, and he usually gets 50 percent, at least, for
16 cooperating against the other person and testifying and
17 assisting in a conviction.

18          In this case, he's not only done -- testified
19 against other people, as you're well aware, twice in court, and
20 according to the Government, at least two dozen times he's --
21 has led, I assume, to other convictions.  But he's gone and he
22 prepared a video.  He sat down with them and went through a lot
23 of other files of theirs to help them and assist them in areas
24 that had nothing to do with this crime, so he's gone the extra
25 mile for these.

1         And if I may, Your Honor, I would just simply say
2    that this is extraordinary penance that he's undergone right
3    now.  And I think the one-third is stingy, and I frankly think
4    Your Honor ought to at least consider a 50-percent reduction in
5    his sentence for the reasons we set forth in that pleading.  I
6    can't see anything that was raised by the Government that
7    should reduce that percentage any more than 50 percent.  I
8    mean, 33 and a third percent, whether it was asked for by Mr.
9    Walutes or whether it was given by the committee I have no
10   idea, but it did appear from reading those pleadings that --
11   and attaching those letters that there was some deference being
12   paid by the committee to the Citizen of Immigration Services.
13   And we address that in our pleadings as far as the lack of due
14   diligence on their part took three and a half years before they
15   even started to speak to him, so I don't know how extensive or
16   less extensive the damage would have been if they had been
17   prompt.
18            I don't castigate the agents.  The IG's office, the
19   FBI, they did great work.  But we did take the CIS to task for
20   their rather tardy response.
21            THE COURT:  When did he start cooperating, after
22   three and half --
23            MR. SINCLAIR:  He started cooperating -- and Mr.
24   Walutes may -- has to refresh my recollection -- but shortly
25   after the plea, November 30th, '06, he was cooperating even

1  before his sentence, and his cooperation continued thereafter.
2           And if Your Honor read the pleadings, he was
3  brought back here on numerous occasions -- I believe at least
4  four -- two of which -- and one stay was 50 days he was in the
5  Alexandria jail.  The FBI, IG spoke to him.  That's the first
6  time CIS showed any interest.  That was three and a half years
7  later, July 2010.  And they came in, maybe spent ten days --
8  ten of those days interviewing him.  But whatever that is,
9  he -- he was here for a very long time, and he did spend a lot
10 of time cooperating.
11          And it's not just like he came in here once and
12 testified or twice against a couple of defendants.  He has been
13 available.  24 people, I believe, have been brought to justice,
14 and I think this cooperation, as outlined by the Government and
15 also supplemented by us, is extraordinary compared to the
16 normal cooperation that's brought before this court in where
17 the minimum -- I -- at least I perceive to be the usual minimum
18 of about 50-percent reduction.
19          The reasons set forth in the memorandum, Your
20 Honor, unless you have other questions, I believe that --
21          THE COURT:  Okay.
22          MR. SINCLAIR:  -- 50 percent is warranted.
23          THE COURT:  Very well.
24          Mr. Walutes, any rebuttal, sir?
25          MR. WALUTES:  Your Honor, I would only confirm that

1  Mr. Schofield was contrite from his arrest and -- and
2  Mr. Sinclair was lead back then and told me initially that this
3  was going to be a plea and that he wanted to work with us to
4  clean this up.  So as to his cooperation, your first question
5  of defense counsel, I -- I would agree that it was from the
6  beginning.
7          THE COURT:  Okay.
8          The Court feels that a 50-percent reduction is
9  appropriate.  I'm going to give him 90 months on count two, 60
10 months on count six, run them concurrent.  The other provisions
11 in the judgment in the criminal case rendered on April 20th,
12 '07 remain in full force and effect.
13         I'll make this reduction in light of, one, the
14 significance and usefulness of defendant's assistance,
15 including the Government's evaluation of the assistance
16 rendered.  And the Government apparently feels that he did
17 render great assistance to the Government;
18         To the truthfulness, completeness, reliability,
19 information or testimony provided by the defendant:  He's
20 testified in a couple of trials.  He also made -- made a video,
21 a training video, and he stayed in the Alexandria jail for 50
22 days to be debriefed;
23         The nature and extent of defendant's assistance:  I
24 think it's extraordinary of the amount of assistance he's given
25 the Government;

1    Any injury suffered or danger or risk of injury to
2 him: There's no -- nothing. No evidence on that;
3    Timeliness of defendant's assistance: He started
4 cooperating right after the -- he was found guilty.
5    So with those reasons, the Court feels that a
6 50-percent reduction is appropriate and can enter also the
7 Government's recommendation and the harm to the victims in this
8 case, but I think that's fair under the circumstances.
9    Thank you. Okay.
10   MR. SINCLAIR: Thank you, Your Honor.
11   MR. WALUTES: Thank you, Your Honor.
12        (PROCEEDINGS CONCLUDED AT 9:15 A.M.)
13                    -oOo-
14
15 UNITED STATES DISTRICT COURT   )
   EASTERN DISTRICT OF VIRGINIA   )
16
        I, JULIE A. GOODWIN, Official Court Reporter for
17 the United States District Court, Eastern District of Virginia,
   do hereby certify that the foregoing is a correct transcript
18 from the record of proceedings in the above matter, to the best
   of my ability.
19      I further certify that I am neither counsel for,
   related to, nor employed by any of the parties to the action in
20 which this proceeding was taken, and further that I am not
   financially nor otherwise interested in the outcome of the
21 action.
        Certified to by me this 3RD day of DECEMBER, 2012.
22
23                    /s/
                      JULIE A. GOODWIN, RPR
24                    CSR #5221
                      Official U.S. Court Reporter
25                    401 Courthouse Square
                      Alexandria, Virginia  22314